FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 DEC 20 PM 3: 19

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS

**CHARLES LINCOLN,**
        **Plaintiff,**

v.

**LYDIA SELLE,**
**SHARON QUAIL,**                         **CIVIL ACTION**
**PATRICIA L. FIRMIN,**                   **NO. 06-1414**
**RICK PAULK,**                           **SECTION C**
**PAULK'S MOVING & STORAGE, INC.,**
**GULF COAST RELOCATION SYSTEMS, INC.,**
**DATA MANAGEMENT ARCHIVES**
        **OF NEW ORLEANS, L.L.C.,**
**EXHIBIT TRANSPORTATION & STORAGE, INC.,**
**dba SHOWTIME EXPRESS, and (via LSA-R.S. 22:611-655)**
**GLENCOE GROUP HOLDINGS, LTD.,**
**STONINGTON INSURANCE COMPANY,**
**RENAISSANCERE HOLDINGS, LTD., and**
**MATTEI INSURANCE SERVICES, INC.,**
        **Defendants.**

## FIRST AMENDED COMPLAINT (with Jury Demand)

(1)     Plaintiff CHARLES LINCOLN brings this complaint against LYDIA SELLE,

SHARON QUAIL, PATRICIA L. FIRMIN, RICK PAULK (natural persons), and

corporations PAULK'S MOVING & STORAGE, INC., GULF RELOCATION

SYSTEMS, INC., DATA MANAGEMENT ARCHIVES OF NEW ORLEANS, L.L.C.,

and EXHIBIT TRANSPORTATION & STORAGE, INC., dba SHOWTIME EXPRESS.

(2)     These (individual and insured corporate) Defendants have all been served,

appeared, and answered the complaint.

(2)     This Court has Federal Question jurisdiction over Plaintiff's claim against these

(individual and insured corporate) Defendants under 28 U.S.C. §1331 and 18 U.S.C.

§1961 *et seq.*, "Civil RICO," see esp. 18 U.S.C. §1964(c).

*FIRST AMENDED COMPLAINT, Lincoln v. Selle, et al., with Jury Demand*

___ Fee___
___ Process___
_X_ Dktd___
___ CtRmDep___
___ Doc. No___

(3)     Venue is proper in the Eastern District of Louisiana because all or most of the transactions and occurrences giving rise to this lawsuit took place in either New Orleans or Harahan, Louisiana and the corporate (insured) Defendants have their principal place of business at 6131 River Road in Harahan, Louisiana 70123.

(4)     Pursuant to LSA—R.S. 22:611, 22:655, Plaintiff is permitted to maintain a direct action against insurer-Defendants Glencoe Group Holdings, Ltd., Stonington Insurance Company, RenaissanceRe Holdings, Ltd., and Mattei Insurance Services, Inc., one or more of which having issued a policy or contract of insurance against one or more of the defendants for liability arising under this lawsuit.

(5)     Plaintiff amends to include the insurers at the suggestion of attorney Ethan N. Penn on behalf of the originally named Defendants, but has not had opportunity to examine the insurance policies regarding each and every (named individual or corporate) defendant, and Plaintiff must accordingly reserve the right to amend his direct allegations under this Complaint to cover only the covered actions of covered individuals and entities by their actual insurer, which insurer has only been designated or identified generally and not as to specific policies or coverage.

(6)     That this Court may exercise supplemental jurisdiction over the state-law based claims under the Louisiana Direct Action Statute pursuant to 28 U.S.C. §1367.

## FACTUAL BACKGROUND & RELATIONSHIP OF THE PARTIES

(7)     Each of the individual Defendants **Lydia Selle, Sharon Quail, Patricia L. Firmin, Rick Paulk,** are employed as officers or managing directors with discretionary responsibilities of each of the corporate Defendants: **Paulk's Moving & Storage, Inc., Gulf Coast Relocation Systems, Inc., Data Management Archives of New Orleans,**

L.L.C., Exhibit Transportation & Storage, Inc., Dba Showtime Express; each of these corporate defendants shared office and storage space and management personnel and each corporate entity named as a corporate Defendant in this suit was the mere alter-ego of every other Defendant, in that business space and management were identical, funds from proceeds of business transactions were commingled, as were receipts from storage and moving contracts, as were employment contracts; and each of the corporate co-Defendants was guarantor for the financial solvency of each of the other co-Defendants, but each of the corporate co-Defendants has now allegedly gone out of business and its assets absorbed by some other entities belonging to RICK PAULK and managed in whole or in part by Lydia Selle, Sharon Quail, and Patricia Firmin, inter alia.

(8)    Upon information (provided by Ethan N. Penn, counsel for the Defendants) and belief, some or all of these Defendants are covered by policies or contracts of insurance or indemnity against their liability as tort-feasors by the one or more of the insurer defendants Glencoe Group Holdings, Ltd., Stonington Insurance Company, Renaissancere Holdings, Ltd., and Mattei Insurance Services, Inc.,

(9)    The transactions & occurrences underlying this lawsuit trace their origins back to November 30, 2000, when Plaintiff suffered severe, nearly fatal, head trauma and other injuries during an assault committed against him on Zamalek (Gezira) Island in Cairo, Egypt, while Plaintiff was planning an archaeological expedition to the Sinai Peninsula on behalf of the Peabody Museum, Harvard University with financial sponsorship provided by Douglas Bradley Vogt and the Diehold Foundation of Bellevue, Washington.

(10)    Prior to Egypt, Plaintiff resided at 5530 Camp Street in New Orleans 70130.

(11)   In January 2001, Plaintiff was forced to remove from New Orleans to live with his family in Texas to convalesce and recover from his head injuries.

(12)   In January 2001, Douglas Bradley Vogt had arranged for the Defendants or their predecessor to clear out Plaintiff's residence at 5530 Camp Street and place all his household goods and movable property in storage.

(13)   Due to his traumatized status in January 2001, Plaintiff was unaware of any of the details of the contract or agreement between Douglas Bradley Vogt and the Defendants, although he was generally aware that his residence in New Orleans had been closed down, vacated by movers, and the lease cancelled.

(14)   According to Plaintiff's treating Dr. Waleed el-Feky of the Texas Neurological Associates in Dallas, Plaintiff's long-term memory was not impaired by his head injuries, whatever the effects on short-term memory or immediate perceptions may have been.

(15)   The contents of Plaintiff's former house on Camp Street and his storage unit, contained, in addition to the usual household equipment of both modern and antique beds, sofas, bookcases, dressers, tables, TVs, VCRs, and chairs, there was a large collection of primitive art, including the prow of a Sepik River New Guinea canoe in the shape of a crocodile head, other Papuan, Polynesian, and South/Southeast Asian artifacts, plus Plaintiff's substantial library of archaeological, ethnological, and comparative legal materials (Plaintiff holding both a Ph.D. from Harvard and a J.D. from the University of Chicago in addition to his B.A. from Tulane University).

(16)   The total legitimate market value of the primitive art and books alone in the storage unit was in excess of $100,000.00, although the antique and modern furniture was worth on the order of only $15,000.00---$25,000.00.

(17) During the ensuing months, although Plaintiff recovered from his injuries, Douglas Bradley Vogt terminated the Sinai project and Plaintiff's full-time employment and renounced any responsibility for Plaintiff's storage unit.

(18) Still, by September or October, Plaintiff, although suffering from head-trauma-related functional impairment and disabilities, was living a relatively normal life, when his attorney (at that time) John F. Campbell of Austin, Texas, received a notice of deficiency from Defendants and paid the storage bill due at that point in time.

(19) In or about April or May of 2003, Defendants sent notices of deficiency and sought to foreclose the storage unit again, but by this time Plaintiff was fully back in control and managing his life (albeit financially depleted). An auction was scheduled for the sale of the Plaintiff's stored property.

(20) Plaintiff offered several proposals for a new contract, a reformed contract, and cancellation of the old contract with Mr. Vogt in that in January or February of 2003, Plaintiff finally terminated his relationship with Mr. Vogt and the Diehold Foundation.

(21) Plaintiff objected that the auction would be unfair because it would not yield anywhere close to enough money to cover the value of the property and because no primitive art appraiser had been brought in to evaluate the property prior to sale. The Defendants themselves cancelled the auction.

(22) After extensive discussions with the Defendants, on May 30, 2003, a complete rescission, reformation, and novation of the original contract with Douglas Bradley Vogt was achieved by negotiation. Doug Vogt's name was never (to this day, February 2006 monthly bill) removed from the monthly bills from Paulk's Storage (and accordingly, Douglas Bradley Vogt is still entitled to full and formal notice of any sale or

"foreclosure" of liens), but Defendant Lydia Selle wrote to the Plaintiff, "your prayers have been answered for now."

(23)    In that same communication, Defendant Lydia Selle wrote that, "Ill talk with you next week." However, no further communications took place between the parties until September or October 2004, except for monthly bills which were sent, itemizing insurance, as well as other, additional charges, apparently finance charges, and late fees.

(24)    What the evidence will show without any doubt or disputes whatsoever is that the reformed/novated contract between Lincoln and Paulk Moving & Storage was an open-ended extension of retail consumer credit to Plaintiff Charles Edward Lincoln which was and is governed by the Federal Consumer Credit Protection Act (15 U.S.C. Chapter 41), the Truth-in-Lending Act (15 U.S.C. §1601 et seq.), the Fair Credit Billing Act (15 U.S.C. §1637 et seq.), and the Fair Credit Debt Collection Practices Act (15 U.S.C. §§1692-1692o); in fact, neither PAULKS nor any of the individual defendants have ever made even a single one of the "required disclosures by creditor" itemized in 15 U.S.C. §1637(a) regarding open end consumer credit plans.

(25)    In direct and express violation of 15 U.S.C. §1637, Defendant PAULK MOVING & STORAGE failed in every regard as follows:

(26)    Defendant failed to make any of the required disclosures by creditor in that, before opening this specific and tailored open-ended account under an open end consumer credit plan, Paulk's did not disclose to the Lincoln (the person to whom credit was being extended each of the following items, to the extent applicable.

(27)    Paulk's did not disclose the conditions under which a finance charge might be imposed (but it was clear from the monthly bills set thereafter that finance charges

WERE imposed), including the time period (if any) within which any credit extended may be repaid without incurring a finance charge, even though Paulk's had the option, at its election and without disclosure, to impose no such finance charge if payment were received after the termination of such time period. If no such time period were provided, Paulk's should have disclosed such fact, but in fact bills were sent out from Defendant Paulk to Plaintiff on a regular monthly basis.

(28)    Paulk's failed to disclose or indicate the method of determining the balance upon which a finance charge would be imposed.

(29)    Paulk's failed to disclose or indicate the method of determining the amount of the finance charge, including any minimum or fixed amount imposed as a finance charge.

(30)    If Paulk's used one or more periodic rates to compute the finance charge, it failed to disclose, identify, or indicate each or any such rate, the range of balances to which it is applicable, and the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year, but the monthly bills indicated that charges were imposed on a regular basis.

(31)    Paulk's also failed to identify any of the other charges which were imposed as part of the plan such as storage or internal moving fees, and also failed to disclose their method of computation, in accordance with regulations of the Board.

(32)    This was a case, covered by 15 U.S.C. §1637, one of those cases where the credit was at all times secured, yet Paulk's failed to provide any statement that a security interest has been or would be taken in all or some of **Plaintiff's property, which was of course NOT** property not purchased as part of the credit transaction identified by item or

type, but was delivered (fully owned and paid) from the Plaintiff to the Defendant as part of a secured transaction of storage services.

(33)    Finally, Paulk's failed to provide the statement required to be in a form prescribed by regulations of the Board of the protection provided by sections 1666 and 1666i of Title 15 to an obligor and the creditor's responsibilities under sections 1666a and 1666i of this title. With respect to one billing cycle per calendar year, Paulk's was obligated but did not transmit to Plaintiff, at intervals of not less than six months or more than eighteen months, such statements to the Plaintiff to whom the creditor was required to transmit a statement pursuant to subsection (b) of Title 15 §1637 for such billing cycle.

(34)    What the evidence will equally show is that neither Defendant PAULK MOVING & STORAGE nor any of its employees, officers, or agents named as individual Defendants in this lawsuit made the slightest attempt to comply with any of these provisions of Federal Law.

(35)    At that time Defendants set the property again for auction, Plaintiff objected on the same grounds as before, Defendants accepted a payment of $5,000.00, and the storage agreement was against novated, the old agreement rescinded, and the relationship between the parties reformed.

(36)    In essence, Defendants could not decide whether to treat Plaintiff as a friend or an arms-length business transaction, even though they officially and in writing agreed to what can only be described as friendly and informal terms of property management and storage since at least May 2003.

(37)    In keeping with the spirit of this friendship, Plaintiff contacted the Defendants immediately after Hurricane Katrina ripped through New Orleans last August, and

Defendants responded and treated Plaintiff as a friend and did not mention any complaints or problems despite the fact that as of September 2005, Plaintiff had not made any payments on his storage unit since October 2004.

(38)    Then, on February 7, 2006, Defendant Patricia L. Firmin (with whom Plaintiff had had no previous contact, unlike Defendants Selle, Quail, and Paulk) sent by regular US Mail an unsigned notice to the Plaintiff that the total amount owing was $6,801.75, and asking simply and informally "when we can expect a payment on your account?"

(39)    The "Invoice Summary" account statement did NOT, however, reflect either the payments made in 2001 by Vogt or Campbell or the novations, reformations, and rescissions of the original contract in May 2003 or October 2004 although only monthly bills of $200.25 since December 1 of 2004 were reflected...and the agreed monthly rate had been less before then. In short, the "Invoice Summary" printed on 02/06/06 at 14:06:36 was deliberately incomplete and misleading.

(40)    On February 15, 2006, at 4:12 p.m., Defendant Lydia Selle wrote:

Mr. Lincoln I have not received any funds from you since the auction. As I'm sure you are aware we have an overwhelming request for storage. I now have no alternative but to have you bring your account up to date by the end of February are all of your items will be delivered to an auction house on March 1st 2006.

Sincerely,

Lydia Selle

(41)    On February 16, 2006, at 10:00 a.m., Defendant Lydia Selle wrote:

Mr. Lincoln,
   You obviously have forgotten about your storage account for last year. Since the threat of the last auction you have not made one attempt to pay a dime on your balance which is now $7002.00. If filing bankruptcy is your only option, I suggest you get started because my process to proceed is now underway.

Sincerely,

Lydia Selle

(41)    These communications sent through e-mail using the facilities of interstate commerce were also deliberately incomplete, deceptive, and misleading.

(42)    For each and every violation of Title 15 alleged above, Plaintiff prays for his actual and consequential damages in the minimum amount of statutory penalties provided by law, especially for violations of the cited provisions of Title 15.

## COUNT I: DECLARATORY JUDGMENT

(43)    Plaintiff realleges paragraphs (1)-(42) of his First Amended Complaint above and incorporates the same by reference as if fully copied and restated herein as part of Plaintiff's Count I.

(44)    Pursuant to 28 U.S.C. §2201-2202, Plaintiff prays that the Court examine, interpret, construe, and declare the rights, responsibilities, and other legal relations of Plaintiff CHARLES EDWARD LINCOLN and the Defendants, specifically the terms of the novated, reformed, and rescinded open end credit plan contracts between them entered or modified since on or about January 2, 2001.

(45)    Pursuant to 28 U.S.C. §2201-2202, Plaintiff further prays that the Court declare and command by exercise of its equitable powers that before any property may be sold to satisfy any legitimate debt, the property in question must be fully appraised by qualified experts in academic and antiquarian books and primitive art.

(46)    Pursuant to 28 U.S.C. §2202, Plaintiff further prays for temporary and permanent injunctions against the sale of the subject property without proper professional evaluation and appraisal.

(47)    Plaintiff prays for all his costs incurred in filing this Petition for Declaratory Judgment.

## COUNT II: BREACH OF CONTRACT

(48)   Plaintiff realleges paragraphs (1)-(47) of his First Amended Complaint above and incorporates the same by reference as if fully copied and restated herein as part of Plaintiff's Count II.

(49)   Plaintiff and the Defendants, in particular Lydia Selle, Sharon Quail, and Rick Paulk, reached an open end credit plan agreement (within the meaning of 15 USC §1602(i)) in October 2004 which superceded and wiped out all previous agreements the parties (or Douglas Bradley Vogt) may have had.

(50)   Patricia L. Firmin's letter of February 7, 2006, was the first written communication (other than a monthly bill showing no cumulative balances or indications of "past due" anything) received by the Plaintiff since October 2004; no material disclosures whatsoever were made in this or any of the monthly communications from PAULKS MOVING & STORAGE, to wit, no itemization of surcharges, interest, late fees, or any other components of the monthly charge have ever been received (or, as far as can be discerned) ever delivered by the Defendants to the Plaintiff in this case.

(51)   Lydia Selle's e-mail of February 15, 2006, constituted a breach of contract, as well as a breach of the expressly assumed duty of good faith and fair dealing which the parties had agreed to in October 2004, as they had done previously in May 2003.

(52)   Lydia Selle was acting as an employee of Paulk's Storage under the direct supervision and control of Rick Paulk and her acts are corporate acts for the purpose of contractual analysis, or agency acts for the purpose of Rick Paulk's liability for breach of contract as the manager of the enterprise.

(53)   Plaintiff alleges his actual, consequential, direct, and special damages resulting from Defendants' breach of contract are in excess of $75,000.00.

(54)   Because Defendants gave only 13 days notice of their intention to sell Plaintiff's property, it was impossible for Plaintiff to give 30 days notice of his intention to sue, and accordingly, Plaintiff should be awarded all his costs incurred in filing this action.

## COUNT III: RICO INVESTMENT---18 U.S.C. §1962(a)

(55)   Plaintiff realleges paragraphs (1)-(54) of his First Amended Complaint above and incorporates the same by reference as if fully copied and restated herein as part of Plaintiff's Count III.

(56)   PAULKS MOVING & STORAGE, INC., GULF COAST RELOCATION SYSTEMS, INC., DATA MANAGEMENT ARCHIVES OF NEW ORLEANS, L.L.C., and Exhibit Transportation & Storage, Inc., dba Showtime Express are all enterprises engaged in and affecting commerce.

(57)   Defendants during the past month have sent at least two letters through the U.S. Mail in violation of 18 U.S.C. §1341 and at least three communications through the wire services and other (e-mail) facilities of interstate commerce in violation of 18 U.S.C. §1343 for the purpose of a scheme to defraud by the unlawful collection of an unlawful or debt or else by the unlawful collection of a legitimate debt. By breach of their expressly assumed duty of good faith and fair dealing (given in May 2003 and October 2004), Defendants have further violated 18 U.S.C. §1346.

(58)   All money paid by or on behalf of Plaintiff since January 2, 2001, to the Defendants and/or their predecessors constitutes income to the individual and corporate Defendants named in this case.

(59)     Individual defendants RICK PAULK, LYDIA SELLE, SHARON QUAIL, and

PATRICIA L. FIRMIN have all received income derived, directly or indirectly, from a

pattern of racketeering activity and through collection of an unlawful debt in which these

individual Defendants have participated as principals within the meaning of section 2,

title 18, United States Code.

(60)     All or part of the payments made by or on behalf of Plaintiff since January 2,

2001, has been used or invested, directly or indirectly, or else the proceeds of such

income have been used or invested, in the acquisition of any interest in, or the

establishment or operation of, the aforementioned enterprises which are engaged in, or

the activities of which affect, interstate or foreign commerce.

(61)     The predicate acts of mail and wire-fraud alleged in ¶(60) above were disguised

as legitimate business notices or communications, and may therefore be inferred and

presumed to constitute the ordinary customs, practices, and policies of the individual and

corporate defendants, and thus to constitute a threat of continuing racketeering activity.

(62)     Plaintiff alleges his actual, consequential, direct, and special damages from

Defendants' acts of racketeering in the minimum amount of $75,000.00.

(63)     Plaintiff prays for threefold his actual, consequential, direct, and special damages

sustained and the costs of suit, as allowed by 18 U.S.C. §1964(c).

## COUNT IV: RICO CONTROL---18 U.S.C. §1962(b)

(64)     Plaintiff realleges ¶¶(1)-(63) of his First Amended Complaint and incorporates the

same by reference as if fully recopied and restated herein in Plaintiff's Count IV.

(65)Lydia Selle, Sharon Quail, Patricia L. Firmin and Rick Paulk, through a pattern of

racketeering activity or through collection of unlawful debts have acquired and/or

maintained, directly or indirectly, either a proprietary interest in or managerial control of

PAULK'S STORAGE & MOVING, GULF COAST RELOCATION SYSTEMS, INC.,

DATA MANAGEMENT ARCHIVES OF NEW ORLEANS, LLC, and EXHIBIT

TRANSPORTATION & STORAGE, INC., dba Showtime Express, all of which are

enterprises engaged in, and the activities of which affect, interstate or foreign commerce.

(66)The predicate acts of mail and wire-fraud alleged in ¶(40) above were disguised as

legitimate business notices or communications, and may therefore be inferred and

presumed to constitute the ordinary customs, practices, and policies of the individual and

corporate defendants, and thus to constitute a threat of continuing racketeering activity.

(67)Plaintiff alleges his actual, consequential, direct, and special damages from

Defendants' acts of racketeering in the minimum amount of $75,000.00.

(68)Plaintiff prays for threefold his actual, consequential, direct, and special damages

sustained and the costs of suit, as allowed by 18 U.S.C. §1964(c).

### COUNT V: RICO EMPLOYMENT---18 U.S.C. §1962(c)

(69)    Plaintiff realleges ¶¶(1)-(68) of his Complaint and incorporates the same by

reference as if fully recopied and restated herein in Plaintiff's Count V.

(70)    RICK PAULK, LYDIA SELLE, PATRICIA L. FIRMIN, and SHARON QUAIL

are all employed by or associated with PAULK'S MOVING & STORAGE, INC., GULF

COAST RELOCATION SYSTEMS, INC., DATA MANAGEMENT ARCHIVES OF

NEW ORLEANS, LLC, and EXHIBIT TRANSPORTATION & STORAGE, INC., dba

Showtime Express, all of which are enterprises engaged in, and the activities of which

affect, interstate commerce, and these Defendants each and together, jointly and

severally, conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt.

(71)   The predicate acts of mail and wire-fraud alleged in ¶(60) above were disguised as legitimate business notices or communications, and may therefore be inferred and presumed to constitute the ordinary customs, practices, and policies of the individual and corporate defendants, and thus to constitute a threat of continuing racketeering activity.

(72)   Plaintiff alleges his actual, consequential, direct, and special damages from Defendants' acts of racketeering in the minimum amount of $75,000.00.

(73)   Plaintiff prays for threefold his actual, consequential, direct, and special damages sustained and the costs of suit, as allowed by 18 U.S.C. §1964(c).

## COUNT VI: RICO CONSPIRACY---18 U.S.C. §1962(d)

(74)   Plaintiff realleges ¶¶(1)-(73) of his Complaint and incorporates the same by reference as if fully recopied and restated herein in Plaintiff's Count V.

(75)   RICK PAULK, LYDIA SELLE, PATRICIA L. FIRMIN, and SHARON QUAIL conspired with each other and with PAULK'S MOVING & STORAGE, INC., GULF COAST RELOCATION SYSTEMS, INC., DATA MANAGEMENT ARCHIVES OF NEW ORLEANS, LLC, and EXHIBIT TRANSPORTATION & STORAGE, INC., dba Showtime Express to violate the several provisions of 18 U.S.C. §§1962(a),(b), & (c).

(76)   The predicate acts of mail and wire-fraud alleged in ¶(40) above were disguised as legitimate business notices or communications, and may therefore be inferred and presumed to constitute the ordinary customs, practices, and policies of the individual and corporate defendants, and thus to constitute a threat of continuing racketeering activity.

(77)    Plaintiff alleges his actual, consequential, direct, and special damages from Defendants' acts of racketeering in the minimum amount of $75,000.00.

(78)    Plaintiff prays for threefold his actual, consequential, direct, and special damages sustained and the costs of suit, as allowed by 18 U.S.C. §1964(c).

## COUNT VII: DECLARATORY JUDGMENT

(79)    Plaintiff realleges ¶¶(1)-(78) of this First Amended Complaint and incorporates the same by reference as if fully copied and restated herein.

(80)    Pursuant to 28 U.S.C. §2201-2202, Plaintiff prays that the Court examine, interpret, construe, and declare the rights, responsibilities, and other legal relations of Plaintiff CHARLES EDWARD LINCOLN and the Defendants, specifically the form, timing, and terms of Defendants' demands for payment, accounting of debits and credits to Plaintiff's account, and declare that the Defendants have since February 6, 2006, acted entirely inequitably and unfairly towards the Plaintiff, and that the Defendants have deliberately and intentionally engaged in false and misleading accounting and collection practices as a matter of all applicable Federal and State Consumer Protection Laws.

(81)    Pursuant to 28 U.S.C. §2201-2202, Plaintiff further prays that the Court declare and command by exercise of its equitable powers that before any property may be sold to satisfy any legitimate debt, the Defendants' accounting, collection, and demand practices in question must be audited pursuant to Federal consumer protection requirements and fully reformed to comply with the real agreements and relationships of the parties.

(82)    Pursuant to 28 U.S.C. §2202, Plaintiff further prays for temporary and permanent injunctions against the sale of the subject property without a prior audit and proper

accounting for all payments received, credits, and rates of interest if any which have been charged in reaching the demand amounts stated by Defendants in February 2006.

(83)     Plaintiff prays for all his costs incurred in filing this Petition for Declaratory Judgment.

### COUNT VIII: 15 U.S.C. CHAPTER 41:
### CONSUMER CREDIT PROTECTION ACT,
### TRUTH-IN-LENDING ACT, 15 U.S.C. §1601 ET SEQ., FAIR CREDIT BILLING ACT, 15 U.S.C. §1637 ET SEQ., AND THE FAIR CREDIT DEBT COLLECTION ACT 15 U.S.C. §§1692-1692O

(84)     Plaintiff realleges ¶¶(1)-(83) of this First Amended Complaint and incorporates the same by reference as if fully copied and restated herein, especially but not limited to ¶¶(7)-(42) above which allege in detail the violations of 15 U.S.C. §1637.

(85)     Plaintiff prays for all his actual, consequential, and special damages, plus all punitive and exemplary damages allowed by law, plus all statutory penalties provided by Title 15 and other applicable statutes.

### COUNT IX: NEGLIGENCE IN STORAGE AND PROPERTY LOSS WHILE IN STORAGE

(86)     Plaintiff alleges ¶¶(1)-(85) of this First Amended Complaint by reference as if fully copied and restated herein below as part of Plaintiff's Count IX.

(87)     Defendant did not allow Plaintiff any time to inventory his property in New Orleans at Paulk's Storage---Plaintiff was warned that the property was about to be closed down and everything swept out if it were not removed immediately and by a certain "drop dead" date.

(88)     Upon unloading the 24 foot U-Haul truck filled with property from Paulk's Storage in June of 2006, Plaintiff discovered that much of his household was missing. Some of the items missing were bizarre and of negligible value: a queen-sized mattress

was delivered without the matching box springs and the frame without its rollers; the value of the box springs is not estimated to exceed $550, the rollers less than $50. An antique silver mirror (ca. 1876) was cracked but more crucially delivered without the dresser to which it belonged, although several removable knobs from the dresser were found; the fair market/replacement value of this dresser is estimated at $6,500.00. Three boxes of books were water-damaged, although supposedly Paulk's Moving and Storage had not been damaged during Hurricane Katrina; the value of the damaged books is estimated at $2,000.00. Six original paintings by Jacqueline Amber Burns were missing from the inventory. The value of these paintings is estimated at $3,600.00. Two ancient Maya ceramic vessels from Honduras are missing; estimated value at $4,000.00. Two Sony TVs, one 26" screen and one 32" screen TV (purchased new in 1999 and 2000, respectively) were damaged and unusable; original cost was $3200.00, value in 2006 would have been somewhat less even if in perfect condition. A "vintage" V-8 tape recorder was missing: estimated value under $300.00. Four original paintings by Alfred Rogoway were missing: estimated value $10,000.00. One antique ivory curving row of elephants carved from an Elephant's tusk from India was missing: estimated value $4,500.00. Four smaller ivory elephants, also missing, value $1,600.00. All pieces comprising one wooden (3-dimensional, bas-relief) antique window panel from India (18th century) missing except for one single surviving fragment: estimated value $5,000.00. One 19th century Aubrey Beardsley print of Dante & Beatrice meeting in Florence missing, estimated value $8,000.00. Antique (heirloom) Christmas stockings and other ornaments from grandparents' house missing, estimated market value under $2,500.00. Two 5 foot (60 inch) wide by 7 foot (six panels each) high glass hinged door

bookcase (made of mahogany, of recent manufacture date but called and marketed as "Antique Lawyer's Bookcases"---both these unit were disassembled into one box per component shelf, but all 12 of the pieces were missing, NONE of them found upon unpacking after delivery to Texas---market and replacement value $7,000.00 ($3500 each). Two VHS-VCRs missing, purchased 1999-2000, original value $750, 2006 market value would have been less, but replacement value at least $500.00. 2 outdoor camping tents, $800 each, also missing. One metal kayak, $800.00. One Antique "Victrola" ("His Master's Voice") record player from Plaintiff's late Aunt's home--- estimated value $2,500.00. Plaintiff has made no effort to estimate individual books, curtains, videos, records, and tapes which were missing, but there clearly was an unconscionably large amount of property missing from the inventory of the storage unit.

(89)    Plaintiff alleges that these items were properly boxed, delivered, and marked prior to delivery to Paulk's in January 2001, under Plaintiff's and Plaintiff's agents' supervision, and that either through negligent storage, improper security, or negligent tracking, all of the above-and-foregoing items of Plaintiff's property were either stolen or misplaced---possibly moved around during preparations for the May 2003 threatened auction---when Lydia Selle admitted that she found some coins and jewelry spilled out of one of the dressers, and to her credit mailed the jewelry to the Plaintiff.

(90)    In the alternative, the supervision and handling of the storage may have been so lax and negligent that employees of Paulk's moving and storage were able to steal or "spirit out" some interesting/valuable objects. Lower level employees of the soon-to-be extinct Paulk's Moving & Storage suggested as much to the Plaintiff in June of 2006.

(91)    In the alternative, individual Defendants Lydia Selle, Sharon Quail, Patricia Firmin and Rick Paulk were, after the May 2003 novation and reformation of the contract, acting as Trustees for Plaintiffs' property, breached their fiduciary duty, and therefore and thereby each individual defendant deprived Plaintiff of his intangible right to honest services in violation of 18 U.S.C. §1346 (see RICO Allegations above).

## COUNT X: LOUISIANA DIRECT ACTION BY INJURED PERSON

(92)    Plaintiff incorporates ¶¶(1)-(91) of this First Amended Complaint by reference as if fully copied and restated herein below.

(93)    Itemized on Plaintiff's monthly bill were charges for and/or references to insurance charges included as part of the storage bill, but none of the disclosures required under 15 U.S.C. §1637(g) or elsewhere in Title 15 concerning insurance charges were ever made by Paulk's Moving and Storage or any of the Defendants to Plaintiff.

(94)    As noted, Plaintiff's informal request for copies of the insurance policies covering the several individual and corporate defendants were refused, but Defendant's counsel Ethan N. Penn suggested the addition of the insurer pursuant to Louisiana Revised Statutes 22:611, 22: 655.

(95)    Plaintiff will offer the insurer Defendants waivers of service of summons and hopes that this will not force any delays in the Court's scheduling order/case management order entered in October.

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution. 28 U.S.C. §1861 and to LR38.1 of the Local Rules of the Eastern District of Louisiana, Plaintiff

demands a trial by jury of all issues and questions of fact so triable, including all questions of fact and all mixed questions of fact and law.

## PRAYER FOR RELIEF

Plaintiff prays that all Defendants be commanded to appear and answer this complaint, and that upon final trial-by-jury, Plaintiff have the following:

(1)     A Declaration that Defendants have violated the Consumer Credit Act, the Truth-in-Lending Act, The Fair Credit Billing Act, and the Fair Credit Debt Collection Act all at once, in chronological order, or at interlacing times continuously since January 2, 2001.

(2)     A finding and declaration that the Defendants pose a danger of continuing illegal activity based upon their long and unrepentant history of violating Federal Credit Laws and using the instrumentalities of interstate commerce to deprive the Plaintiff and others similarly situated of their intangible right to honest services in conformity with the law.

(3)     All Plaintiffs' actual, consequential, direct, and special damages.

(4)     Threefold all damages sustained by the Plaintiff as allowed by 18 U.S.C. §1964(c).

(5)     All Plaintiff's costs in bringing this suit, including a reasonable attorneys' fee if necessary and proper (i.e., if Defendant Insurers' failure to settle this claim in good faith forces currently pro se Plaintiff to hire an attorney).

(6)     Temporary and Permanent Injunctions against the Defendants from scheduling or executing any advertisement or sale by auction of Plaintiff's property to satisfy any legitimate debts without (a) proper appraisal and

evaluation of Plaintiff's special collections of antiquarian and academic books and (b) proper auditing and accounting of all sums and amounts of money alleged in Defendants' demands of February 2006.

Plaintiff has not consented as of the time of filing this First Amended Complaint to a trial by magistrate or any other referral of all or any part of this matter to a magistrate without further notice.

Wednesday, December 13, 2006

RESPECTFULLY SUBMITTED,

CHARLES EDWARD LINCOLN, III
**Plaintiff,** *pro se*
**6102 Valleyview Drive**
**Lago Vista, Texas 78645**

**Tel.: (512) 267-5144**
**e-mail: charles.e.lincoln@att.net**

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above-and-foregoing Plaintiff's First Amended Complaint was sent on December 13, 2006, to Ethan N. Penn, Musgrave, McLachlan, & Penn, L.L.C., 1515 Poydras Street, Suite 2380, New Orleans, Louisiana 70115 by Regular Mail and by Facsimile to (504) 799-4301.

Charles Edward Lincoln, pro se



FedEx PRIORITY OVERNIGHT FRI

Deliver By:
15DEC06
A1

FORM
0200

MSY
XH DRIA

TRK# 8602 8835 3676

70130  -LA -US

emp# 552413  14DEC06

Part # 152347456 REV 907 11/05

fedex.com 1.800.GoFedEx 1.800.463.3339

FedEx Retrieval Copy

0200

**4a Express Package Service**

1 FedEx Priority Overnight
2 FedEx Standard Overnight
3 FedEx First Overnight

**4b Express Freight Service**

7 FedEx 1Day Freight
8 FedEx 2Day Freight

**5 Packaging**

FedEx Envelope
FedEx Pak
FedEx Box
FedEx Tube
Other

**6 Special Handling**

SATURDAY Delivery
HOLD Weekday
HOLD Saturday

**7 Payment**

Sender
Recipient
Third Party
Credit Card
Cash/Check

Align bottom of Peel a

For FedEx

FedEx US Airbill
Express

8602 8835 3676

**1 From**
Date
Sender's FedEx Account Number
Sender's Name                    Phone
Company
Address
City                State        ZIP

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name                 Phone
Company
Recipient's Address
Address
City                State        ZIP

fedex.com 1.800.GoFedEx 1.800.463.3339

This pouch

n Time